22.11213 The Pointe Dallas v. Underwriters of Lloyds, London. Everybody here? Going once? Okay. Here comes somebody. Batter up. Miss Ray, as soon as you're ready, take it away. May it please the Court. This is an appeal from a summary judgment in a first-party insurance case arising from a 2020 fire loss that affected 12 units of the Pointe apartments in Dallas. The key issue before the Court is the interpretation of the policy's Protective Safeguards Endorsement, or PSE. Certain underwriters relied on the PSE in denying the Pointe's claim under their property insurance policy. As a preliminary matter, it's important to recognize that the summary judgment burden on an insurer seeking to avoid coverage based on the application of an exclusion is an extremely heavy one. The insurer has to establish beyond per adventure that the exclusion applies. And certain underwriters can't do that here for four reasons. And before I get into those four reasons, let's look at the PSE itself. The PSE, which is at page 1157 of the record for your reference, says that as a condition to coverage, the insured is required to maintain protective safeguards identified in the schedule, and that schedule appears in the PSE itself directly above that exclusionary language. It's a little chart with several columns. It says that the protective safeguards to which the endorsement can apply are identified by the following symbols, and then it lists six symbols, P1, P2, P3, P4, P5, and P9. Only two of those, P2 and P9, are implicated here. What the PSE says when it identifies the symbol P2, in the text of the PSE itself, it says P2, P-2, automatic fire alarm protecting the entire building that is A, connected to a central station, or B, reporting to a public or private fire alarm station. And then the symbol P9, that's identified in the PSE, is designated as the protective system described in that schedule. They are contained in the PSE. The first reason that certain underwriters cannot meet their burden is that it is undisputed that the schedule in the PSE itself, the schedule that's referenced by the exclusionary language, is blank. It doesn't list any protective safeguards at all in that column that says protective safeguards systems applicable. It does say in fine print within the schedule that the information that's required to complete that schedule will be shown in the declarations or the commercial property insurance schedule. But the schedule itself, the schedule in the PSE, is blank. Whatever information was in the declarations or the commercial property insurance schedule wasn't used to complete the schedule in the PSE. It's not reflected in the schedule and it's not incorporated by reference. And our research has not found any case, there's not a whole lot of protective safeguard cases, period, but none of the cases that we have found had a situation like that where the actual schedule in the endorsement itself that's supposed to identify the safeguards is blank. So without even getting into the minutia of what all these terms mean and what the various safeguards are or what the point had in place at the time of the loss, on a very basic level, certain underwriters can't meet their summary judgment burden because the schedule doesn't require any protective safeguards at all. The second reason certain underwriters can't meet their burden to establish the exclusion applies is that if the PSE does require protective safeguards, it only requires smoke detectors, which it is undisputed that the point had. We know that the schedule in the PSE doesn't identify any protective safeguards, but remember it does reference the commercial property insurance schedule in the declarations, and that's at pages 1124 to 1127 of the record. The commercial property insurance schedule at page 1127 is kind of a spreadsheet of information about the policy, about the insured. It gives it the location, the age of the apartment complex, the square footage, the roof type, the stated value, those kinds of things. And it has one column that's called protective safeguards, where it says underneath there, P2, fire alarm, colon, local, and then P9, other, smoke detectors. If we go back and look at the PSE itself, it says that the protective safeguards to which this endorsement applies are identified as follows, and it identifies that P1, P2, P3, P4, P5, and P9. It doesn't identify anything called P2, fire alarm, local. It's the P2 automatic fire alarm covering the entire building that reports to a central station or to a public or private fire alarm station. So, again, without even getting into what all these terms mean, certain underwriters can't meet their summary judgment burden because whatever is listed in that commercial property insurance schedule is not something that the endorsement itself, by its own terms, can apply to. So, just so I'm clear, it's your argument that the protective safeguards table, it references the policies declarations, it references the commercial property insurance schedule, but it doesn't incorporate them. It does not. It says that the information required to complete this section will be found there if it's not here. Why does that language not incorporate what is found in those other documents? Well, because it says it's the information required to complete it, but it's not completed. And I understand that that maybe sounds like a distinction without difference, but in every case that we were able to find, they all contain that same language, and in every one that we've found, it is completed. I mean, there is something there in the schedule. So, it doesn't explicitly incorporate it by reference. But the third reason that they can't meet their burden is that if the policy does require some safeguard other than smoke detectors, which, again, are undisputed, the policy is ambiguous with regard to what that safeguard is. There's more than one reasonable interpretation. It could be construed as requiring, if anything, safeguard P2 as it's identified in the PSE, an automatic fire alarm covering the entire building that reports either to a central station or a public or private fire alarm station. Automatic isn't defined, fire alarm isn't defined, central station isn't defined, fire alarm station isn't defined. The only type of alarm mentioned in the PSE, though, is automatic fire alarm. It could also be construed as requiring safeguard P2 fire alarm local, which is what appears in the commercial property insurance schedule. And, again, fire alarm isn't defined anywhere in the policy, and local isn't defined anywhere in the policy. Now, certain underwriters didn't offer any summary judgment evidence of what any of these terms means. And as we pointed out in our brief on pages four and five, certain underwriters, their own statements are inconsistent about what they mean. We have the claim decision letter, which takes the position that the policy required P2 fire alarm local, and says we're denying your claim because we found there was no local fire alarm system in place. And, incidentally, to add even a little bit more confusion, the words fire alarm system, which I understand is also a term of art in the industry, don't appear anywhere in the policy. But in addition to that, we have certain underwriters' brief in this court where they argue on page 20 that the policy required an automatic fire alarm protecting the entire building connected to a central station or reporting to a public or private fire alarm station. And then three pages later in their brief, certain underwriters say the policy clearly required P2 fire alarm local. And then yet another portion of their brief, they say the PSC required an automatic fire alarm ringing locally or centrally protecting the entire building. Central Underwriters has yet to articulate what exactly they think the policy required the point to have. The claim decision letter and the multiple statements in their brief are internally inconsistent. And there's no evidence in the summary judgment record that establishes what automatic fire alarm is and what a local alarm is. We do know, however, that courts have recognized that those two terms are not interchangeable. Courts have said that an alarm that reports to a central station or a fire alarm station and a local fire alarm are not the same thing. A local alarm, as the name implies, is an alarm that sounds at the premises. A central station alarm or one that reports to a fire alarm station is one that alerts an outside monitor, such as the police department, fire department, or a third-party security firm when triggered. But again, those terms are not interchangeable. And the fourth reason that certain underwriters can't meet their burden is that if the policy isn't ambiguous, it requires at most smoke detectors and a local alarm. And it's undisputed that the point had multiple smoke detectors in every unit in the leasing office. And when those detectors sent smoke, it would trigger an alarm that would sound from that particular apparatus. It doesn't call the fire department. It's not wired to another device so that it makes another device sound. But it sounds an alarm when it's triggered. At a minimum, the summary judgment evidence establishes a fact issue with regard to whether the point was in compliance with the PSC. The court should reverse summary judgment on the point's brief of breach of contract claim. And consequently, for the reasons in our briefing, reverse summary judgment on the point's extra contractual claims and remand to the trial court. And if the panel doesn't have any further questions, I'll conclude until rebuttal. Ms. Wright, thank you. We'll see you back in a few minutes. Thank you. Mr. Belliveau, did I pronounce that correctly? Yes, you did, Justice Willett. May it please the court, Ian Belliveau on behalf of certain underwriters. It is certain underwriters' position that the court should affirm the trial court's granting of summary judgment denying coverage for the fire in this case for several reasons. First, it is without dispute, or I guess it is without, the policy required two protective safeguards. It had P2 and P9. And if you look at P2, even looking at the local fire alarm, or whether it's automatic fire alarm, it still required the presence of a fire alarm. And the second thing it required is the presence of smoke detectors. There was an inspection done in two cases. Can both of those be in the same instrument? I would say, Justice Wiener, based on what I found in reading and what we found in the NFP and what is cited in there, no, they cannot be the same instrument. And if you look at the Vanguard case, or the NorGuard case that we cited, I believe it was a New York case that talked about the need to have two and a P9, and the P2 was the automatic fire alarm, and the P9 was a local fire alarm. So it actually required two fire alarms, and that court said no. Whenever there's a requirement in the policy that there be two protective safeguards, the insured cannot pick and choose which one it wants to try and satisfy that requirement. It must have both. Well, was there evidence in this case that what was there only provided one of the protections? Yes, they only had smoke detectors that were, I'm going to call them conventional smoke detectors like you'd buy at Home Depot or Walmart that you just put up with a battery. Even the smoke detectors within the unit, an individual unit, were not wired together, much less within a building, and this building, I think, contained 12 units. So there was an inspection done, an underwriting inspection done in 2019, correct? Yes, Justice Douglas, there was. It's Judge Douglas, but is there any reason why the inspector didn't mention the necessity of the local fire alarm at that time? We don't know that. We don't know why it wasn't. There's nothing in the record to establish anything other than this one email. But one thing that's important to notice is that while underwriters orders the underwriting inspection, underwriters has no role in selecting the person that's going to do it, nor does that person work for underwriters. As is laid out in the briefing, there's several steps here. There's the point, and they went to their retail agent, Mora, who then went to Makia Agency, who then went to Novus, who then went to DECUS. All of those people are agents of the insured. None of them are agents of certain underwriters. So to the extent that that inspection was done, that information, that inspection was done at the behest of an agent of the insured, and that was passed along. We don't know what other information was out there. I believe there's an inspection report out there, but it's not part of the summary judgment record. And also note that that inspection was done in connection with the prior year's policy. So moving on, this is, again, it requires both protective safeguards. They only had one. And based on the Norgard case, it can stop there. One protective safeguard. The 2019 inspection, it didn't include, it omitted the need to maintain coverage of the two instruments. So if I understand your question, Judge Wiener, is that you're saying that the email that was sent, I don't remember the exact date on it, that it doesn't say anything about the need to have two devices? Is that what you're asking? Yes. It doesn't, but it doesn't not mention it. And what's important is these inspections are not inspections to make sure that everything with that property is fine and that it meets all the conditions preceding in the policy. Because it is, underwriters has no obligation to make sure that an insured, like the point, is meeting its obligations in the policy and having all the necessary requirements. The sole purpose of these inspections is to determine insurability. And what you can run into is if you have, if every time an email, well, that's because there, and I don't know the full history behind this, but there was a notice of cancellation that had been issued due to insurability. And they said, you need to fix these things for your policy to remain in place. But I don't remember the exact language of the email, but it doesn't mean to ensure coverage, because there's a lot of other things that can happen. And remember, that email was not sent by an agent of underwriters. That email was sent by the insured's agent. So if you go and try to impute or create an estoppel defense related to this one, and this isn't in there, you'd be allowing estoppel to create coverage where it otherwise would not. And that's not permissible under Texas law. But the other thing that you would have happen is, and this is kind of catastrophizing maybe a little bit, but then what you would run into is underwriters just saying, we're not going to order these underwriting inspections. Because if someone who isn't even our agent sends an email, and it's later going to be come back and used against us, even though we didn't authorize it, there's nothing in the record that underwriters knew that email was being sent, then why are we going to do these? We're just going to look at a building history, see that it's only five to eight years old, as long as it's within that window, then we'll insure it. If not, we don't want anything to do with it. Because there's a lot of other things that could impute coverage, like wear and tear, as opposed to a loss, for example. So no, I don't think that that email creates coverage, nor does it say that if you do these things, every loss that's conceivable will be covered. And it didn't say, anyway, that's on that. The other thing is the policy, as they offer it, does not have more than one reasonable interpretation. Because if you go outside of the term local and automatic fire alarm, none of these are defined in the policy. If you look at the way that they're used in the fire industry, there is no way that a local alarm, a P2 local alarm, there's no way that it can ring to a central station or ring to a public or private fire station. So how would that be a reasonable interpretation that I'm only required to have a local alarm, which they didn't even have? But how would that be a reasonable interpretation when none of those, neither of those things is even possible? So how, that doesn't advance a reasonable interpretation. On their, going to their next issue, to say that the policy doesn't have any perspective safeguards, as Judge Willett pointed out, the policy clearly refers, says if this information is not shown, go to the declarations page or to the commercial property insurance schedule. Mr. Ray says refers doesn't mean incorporates. I think it's a distinction without a difference, because it says if the information is not shown here, go look to these places. The exact wording is, if not shown here, the required information, if not shown here, will be shown in the declarations or commercial property insurance schedule. If it's not referring the insured to that portion to obtain that information, what is the point of even directing them to there? But the bottom line is the information was contained within the confines of the policy. And because they have it, they were deemed to have knowledge of it. If we were to conclude there's no ambiguity in the policy, do we need to reach the statutory claims? No, because their claims go away. Unless you, as the way I understand it, unless you found that that email that was sent by Makia, their agent, to another one of their agents, unless you found that attributable to underwriters, which there's no evidence in the record that it can be, unless you found that somehow that created a benefits lost rule, then conceivably that would, because in their situation, they're claiming if that email led them to, misrepresented to them what was available under the policy, and so they, I guess, didn't do things, so conceivably that would not get rid of the statutory claims. But if you granted this, if you affirm the summary judgment, at least as to the contractual claims, it would get rid of them. But as I've already pointed out, the email that was sent, again, it's not attributable to underwriters. That email doesn't say, oh, if you do these things, everything will be covered. But more importantly, that email cannot be attributed to underwriters, and that's what Judge Lynn focused on in the trial court. She says, show me something that this is from underwriters. It only says per our syndicate. And finally, the smoke detectors are not, if you generously read the policy and say, okay, it requires a local fire alarm, they're advancing this as only a local alarm. That's not what it says in the commercial property insurance schedule. It says a local, it says fire alarm colon local. There's no evidence that smoke detectors are the same as a fire alarm. Just like in the NorGuard case, there were two protective safeguards required here. What about a single device that serves as both a smoke detector and a fire alarm? Would that meet the requirements under the policy? I guess, I haven't seen, the only case I've seen even addressing the issue of dual instruments is the NorGuard case. And in that one, again, it's weird because it's both fire alarms. And I guess to an extent, it would then say, oh, it would depend on, are you requiring the P2 that's in the policy definition of having an automatic fire alarm that protects the entire building that either rings to a central station or a public or private station? Or are you just requiring it to be a fire alarm local? I guess it depends on what one because I don't think you could have both with a smoke detector if you're requiring the P2 as written in the policy. Because as I understand it, smoke detectors are not fire alarms. Smoke detectors detect smoke, whether it's from a fire or you left cookies in the oven too long or something else where the purpose of a fire alarm actually detects fire. Unless there are any more questions. Thank you very much. Thank you. Ms. Wright, you're going to close out the week for us. All right. Happy to do it. All right. Please, the Court. Mr. Beliveau said we have to look at the way that these terms are used in the industry because they're not defined in the policy. The problem with that is there's no evidence in the summary judgment record of how these terms are used in the industry. It's their burden to establish what the exclusion says and that we don't have what is required by the exclusion or what's required by the endorsement. Without some evidence in the record saying what these terms mean in the industry, it's impossible for them to establish as a matter of law that we didn't have whatever was required. The Vantage Property Management case, which we discussed in our opening brief, found that where terms like central station and fire alarm station were undefined in the policy, that the policy was ambiguous as a matter of law because those are not terms that a layperson would understand and would know. Certain underwriters could have had an expert, a fire safety, fire protection expert, that could have offered expert testimony about what these terms mean in the industry. They didn't do that. The policy doesn't define it. We don't have any summary judgment evidence that defines what these terms mean. It's impossible as a matter of law then for them to establish as a matter of law that the point didn't have the proper safeguards in place. And the fact that we're having all this discussion about what's a local alarm, what's a central station, what's an automatic alarm, what's a smoke detector, underscores the fact that there is a fact issue about that there's more than one reasonable interpretation and that there's a fact issue about whether or not the point had the appropriate safeguards in place. There's nothing in the policy that says that you can't have a single device that serves both functions. It's just not there. In the Norgard case, it was impossible because, as the court pointed out, a local fire alarm and an automatic fire alarm connected to a central station or reporting to a fire alarm station are two different things. So in that case, the same device couldn't have served both functions because you're talking about two different types of alarms. The court didn't, and I believe in their briefing they say that the court held that they have to be separate and distinct. Those words, I mean, that wasn't the court's holding. The court said that this ensured, yes, this ensured under this policy was required to have both a local fire alarm and an automatic fire alarm reporting to a central station, et cetera. The court did not say those two things must be separate and distinct. There's no dispute here that the point did not have an automatic fire alarm connected to a central station or reporting to a public or private fire alarm station. There's no dispute about that. The problem is the only place that appears, that that description or definition or identification appears, is in the text of the exclusion. It doesn't appear in the schedule, and it doesn't appear in the commercial property insurance schedule that's referenced in the PSE schedule. For that reason, the only possible interpretation could be exactly what the PSE says, which either it's here in the schedule or it's what's up here in this commercial property insurance schedule, and what's in that commercial property insurance schedule is fire alarm local and smoke detectors, and there's, at a minimum, a fact issue about whether the point had both of those safeguards in place. Okay. Thank you. Thank you very much. That will conclude today's arguments and the week's arguments, and the court will stand adjourned.